**GRAPHIC DIRECTIONS, INC.,
a Colorado corporation,
Plaintiff–Appellee,**

v.

**Robert L. BUSH and F. Dennis
Dickerson, Defendants–
Appellants.**

No. 91CA0238.

Colorado Court of Appeals,
Div. V.

May 21, 1992.

Rehearing Denied July 2, 1992.

Certiorari Granted Feb. 16, 1993.

Sommer & Stevens, P.C., Peggy E. Stevens, Denver, for plaintiff-appellee.

Hutchinson, Black, Hill & Cook, William D. Meyer, Boulder, for defendants-appellants.

Opinion by Chief Judge STERNBERG.

Robert L. Bush and F. Dennis Dickerson appeal a judgment entered on a jury verdict in favor of Graphic Directions, Inc. (GDI), awarding compensatory and exemplary damages for breach of fiduciary duty. We reverse the judgment, vacate the award of actual damages for breach of fiduciary duty and remand with instructions concerning the award of exemplary damages.

GDI, a small graphics business, was started by a husband and wife team, Grant and Oli Duncan, in 1975. Bush became a shareholder, vice-president, and marketing director in 1983, and Dickerson was hired as a free lance artist in 1985. Upon the death of Grant Duncan in 1988, Oli Duncan continued operating the business, Bush retained his position, and Dickerson was appointed to the position of art director.

Dissatisfied with management decisions made by Oli Duncan after her husband's death, Bush made preparations to start his own business early in 1989. He discussed his plans with Dickerson and another GDI employee, George L. Roche, Jr., but not with Oli Duncan. On April 17, the three employees resigned from GDI and immediately began operation of a competing graphics business, Concepts 3.

GDI then filed a complaint asserting numerous causes of action, (of which only three were .actually tried), and the three employees counterclaimed alleging defamation. The court denied the defendants' motions for a directed verdict at the close of the plaintiff's case and again at the conclusion of the case.

The jury returned a verdict in favor of GDI against Bush in the amount of $91,400 for breach of fiduciary duty, $2.50 for conversion, and $1,056.30 on the diversion of corporate opportunity claim, and it assessed exemplary damages in the amount of $30,000. It found in favor of GDI on Bush's counterclaim for defamation.

The jury awarded GDI $26,733 on the breach of fiduciary duty claim against Dickerson and also assessed exemplary damages against him in the amount of $5,000. The verdict was in favor of Dickerson on the conversion claim and in favor of GDI on his defamation counterclaim.

The jury found in favor of the third employee, Roche, on GDI's claims and on his counterclaim for defamation, but it awarded him damages in the token amount of $1.

The court entered judgment on these verdicts and denied post-trial motions for judgment notwithstanding the verdict or new trial. Bush satisfied the judgment on the conversion and diversion of corporate opportunity claims.

Bush and Dickerson now appeal the judgment on the claim for breach of fiduciary duty, contending that the court erred in submitting it to the jury. The issues before us are whether, as a matter of law, GDI established the elements of this claim and, if not, to what extent the award of exemplary damages may stand.

## I.

■ In order to recover on a claim for breach of fiduciary duty, a plaintiff must prove: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages, and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *CJI–Civ.2d* 26:1 (1989).

### A.

■ In essence, Dickerson argues that the trial court erred in not submitting to the jury the question of whether a fiduciary relationship existed between himself and GDI. He recognizes that the supreme court held that a duty of loyalty exists between an employer and his employees in *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo.1989). However, he contends that because he was an hourly employee with no management or administrative authority, he was not subject to the fiduciary duties outlined in *Mulei*. In his view, the thrust of *Mulei* was to extend a fiduciary duty only to corporate officers and other high-echelon employees. He argues that it would be unjust to impose a duty of loyalty upon an employee who has no authority to act for the corporation and whom the employer may terminate without cause.

In *Paine, Webber, Jackson & Curtis v. Adams*, 718 P.2d 508 (Colo.1986), the supreme court recognized that although the existence of a fiduciary relationship is a question of fact, a trial court may resolve the question as a matter of law under certain conditions. There, after determining that a stockbroker/customer relationship was not, *per se*, fiduciary in nature, the court held that proof of practical control of a customer's account by a broker would establish the existence of a fiduciary duty. It then concluded that, because the evidence when viewed most favorably to the defendants, conclusively demonstrated that the brokers controlled the plaintiff's accounts, the trial court acted properly when it instructed the jury that, as a matter of law, the defendants owed the plaintiff a fiduciary duty.

Here, the effect of the trial court's instructions was to take the question of the existence of a fiduciary duty from the jury. The trial court instructed the jury that in order for GDI to recover on its claim for breach of fiduciary duty, it must prove that the Bush and Dickerson were employees. In reliance on the supreme court's decision in *Mulei*, the court also instructed the jury that: "At all times during his employment, an employee is subject to a duty of loyalty to his employer in all matters connected with his employment."

The *Mulei* court based its determination that an employee owes a fiduciary duty to his employer upon the Restatement (Second) of Agency § 387 (1958) which provides that an agent is subject to a duty "to act solely for the benefit of the principal in all matters connected with his agency."

However, in footnote 10 the court pointed out that:

[b]ecause an employee's duty of loyalty is based in part on agency law, some cases suggest that the higher standard of the duty of loyalty may only be appropriate where an employee has sufficient authority to act for the employer or access to confidential information to make apt the principal/agent analogy.

Additionally, in her special concurrence, Justice Mullarkey emphasized that when an employee was not an agent of the employer, the duty of loyalty and the test for a breach of that duty might be different from that defined by the majority.

The *Mulei* court was concerned with balancing society's interest in free and vigorous economic competition with the competing policy considerations of honesty and fair dealing by employees.

Similar considerations influenced the courts to which our supreme court referred in the *Mulei* opinion. *See Chelsea Industries, Inc. v. Gaffney*, 389 Mass. 1, 449 N.E.2d 320 (1983) (employee occupying a position of trust and confidence is bound to act for employer's benefit in all matters within scope of his employment); *Maryland Metals, Inc. v. Metzner*, 282 Md. 31,

382 A.2d 564 (1978) (fairness dictates that employee not be permitted to exploit trust of his employer to obtain unfair advantage in competing in matter concerning employer's business); *Las Luminarias of New Mexico Council of the Blind v. Isengard,* 92 N.M. 297, 587 P.2d 444 (1978) (employment relationship is one of trust and confidence; employee has duty to use best efforts on behalf of employer).

As art director, Dickerson handled the technical art aspects of GDI's accounts and supervised the work of other artists employed by GDI. Furthermore, he had ongoing personal contact with many of GDI's most important clients and personally serviced their needs.

Although, as the supreme court suggested in the *Mulei* decision, there may be circumstances under which the duty of loyalty does not apply to an employee, under the facts before us, even when viewed in a light most favorable to the defendant, it is clear that Dickerson's position was one of sufficient authority that the principal/agent analogy is apt beyond question.

Accordingly, we conclude that the trial court did not err in instructing the jury that if it found Dickerson was an employee, it must conclude that he owed a fiduciary duty to GDI.

### B.

■ Although the evidence was not overwhelming, we do conclude that it was sufficient to support the jury's conclusion that Bush and Dickerson breached their fiduciary duty to GDI.

■ While still employed, an employee may make preparations to compete after termination of his employment and may advise current customers that he will be leaving. However, pretermination solicitation of customers for a new competing business violates the employee's duty of loyalty. *Jet Courier Service, Inc. v. Mulei, supra.*

Indeed the very heart of the *Mulei* decision is to give vitality to an employee's duty of loyalty to his employer. When *Mulei v. Jet Courier Service Inc.,* 739 P.2d 889 (Colo.App.1987) was decided by this court, we upheld the trial court's conclusion that an employee's pre-termination meetings with customers did not breach the employee's duty of loyalty. In reversing, the supreme court placed great reliance on Restatement (Second) of Agency § 393 comment e (1958) and held that this court and the trial court had "applied an unduly narrow legal standard in holding [the employee's] pre-termination customer meetings were not a breach of [the employee's] duty of loyalty...." The supreme court, therefore, ordered the case remanded to the trial court to determine if the pre-termination customer meetings were "impermissible solicitation" or "allowable preparation for competition."

In denying Bush and Dickerson's motions for a directed verdict and for judgment notwithstanding the verdict, the court determined that circumstantial evidence would permit an inference that they solicited customers prior to terminating their employment with GDI, causing some customers to transfer their business to Concepts 3. Therefore, under the *Mulei* principles, the trial court in this case would have erred had it resolved the issue as one of law and granted either a directed verdict or a judgment notwithstanding the verdict.

The record supports the court's conclusion that there was competent evidence to support the verdict that Bush and Dickerson had breached their fiduciary duty to GDI. Thus, although we might have reached a different conclusion, the jury verdict may not be disturbed. *See City of Aurora v. Loveless,* 639 P.2d 1061 (Colo. 1981).

### C.

■ Nevertheless, although the evidence was sufficient to establish the existence and the breach of a fiduciary duty, we agree with Bush and Dickerson that, as a matter of law, the evidence of damages was insufficient to permit the claim to go to the jury.

Their basic contention is that a tax loss is not the proper measure of lost profit dam-

ages. They also argue that because four customers continued to do business with GDI and because there was no evidence that eight other lost customers did business with Concepts 3, GDI failed to prove that its lost profits were directly attributable to their conduct.

■ Damages for lost profits are measured by the loss of net profits, meaning net earnings or the excess of returns over expenditures. *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960).

■ An award of damages cannot be based on speculation or conjecture; however, a business has the ability to produce specific historical records showing customary net profits from which a reasonable reliable estimate of its losses can be made. *Lee v. Durango Music, supra.*

■ Because recovery is allowed once the cause and existence of damages have been established, even though the exact amount of damages may be uncertain or impossible to determine, the claimant is obligated to offer the best evidence available in proving its damages. *Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985).

■ The key to establishing lost profits is the proof of a course of business activity through business records. *Triple R Industries v. Century Lubricating Oils,* 912 F.2d 234 (8th Cir.1990). *See also K & R, Inc. v. Crete Storage Corp.,* 194 Neb. 138, 231 N.W.2d 110 (1975) (when a plaintiff, in attempting to prove loss of profits, fails to produce available records relevant to such question, he does not fulfill his obligation of proving damages with reasonable certainty); *B & B Farms, Inc. v. Matlock's Fruit Farms, Inc.,* 73 Wash.2d 146, 437 P.2d 178 (1968) (no damage award to plaintiff who demonstrated lost profits but failed to offer evidence as to what his profits would have been had he not been sold the wrong variety of plants).

■ GDI's accountant testified that the company lost $173,337 net *taxable* profits in the eighteen months following the employees' departure. Because these figures may reflect expenditures made to reduce the corporation's tax liability, they do not necessarily represent actual net profits. Likewise, Oli Duncan's testimony as to the amount and percentage of sales lost from GDI's reduced customer base is not a measure of its lost profits. *Triple R Industries v. Century Lubricating Oils, supra; Lockwood Grader Corp. v. Bockhaus,* 129 Colo. 339, 270 P.2d 193 (1954). And, although it could have done so, GDI did not provide financial statements which would have allowed the jury to compare the company's historical income and expenses with the income and expenses in the months following the departure of Bush and Dickerson.

■ Before damages for lost profits may be awarded, one who seeks them must establish that the damages are traceable to and are the direct result of the wrong to be redressed. *Runiks v. Peterson,* 155 Colo. 44 392 P.2d 590 (1964).

GDI's accountant testified that he did not have an opinion as to whether the tax losses were caused by Bush and Dickerson's conduct. Nor is there evidence establishing a causal link between all the lost sales and Bush and Dickerson's solicitation of customers. At least four customers continued to do some business with GDI, and it presented no evidence that eight other lost customers did any business with Concepts 3.

We conclude that, as a matter of law, GDI's evidence was insufficient to establish a claim for breach of fiduciary duty. Because GDI failed to provide the jury with the best available proof for computing its lost net profits and because it failed to establish that its lost profits were traceable to and the direct result of Bush and Dickerson's conduct, the claim should not have gone to the jury, and, therefore, the damage award for lost profits cannot stand.

## II.

The jury was instructed that if it awarded actual damages on GDI's claims for breach of fiduciary duty, conversion, *or* diversion of corporate opportunity, it should consider whether exemplary damages should be awarded, and if so, that it could assess a reasonable sum not to exceed the amount awarded as actual dam-

ages. However, the record does not indicate the basis upon which the jury determined the amounts of exemplary damages.

### A.

██ Because the jury found in favor of GDI against Dickerson only on the claim for breach of fiduciary duty, and because we have determined that the actual damages award on that claim cannot stand, it follows that the exemplary damages also cannot stand. *See Concord Realty Co. v. Continental Funding Corp.*, 776 P.2d 1114 (Colo.1989) (there can be no award of exemplary damages in absence of successful underlying claim for actual damages).

### B.

However, the jury found in favor of GDI against Bush on all three claims, and he has satisfied judgments for conversion and diversion of corporate opportunity. Consequently, exemplary damages based on these claims are allowable. *Concord Realty Co. v. Continental Funding Corp.*, supra.

██ Nevertheless, § 13–21–102(1)(a), C.R.S. (1987 Repl.Vol. 6A) provides that "the amount of reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." Thus, the most that can be awarded here is an amount equal to the actual damages awarded GDI against Bush on the remaining claims of conversion and diversion of corporate opportunity.

Accordingly, the judgments against Bush and Dickerson for breach of fiduciary duty are reversed, and the cause is remanded with directions to vacate the existing awards for actual and exemplary damages and to enter judgment in favor of GDI against Bush for exemplary damages in an amount equal to the actual damages awarded on the claims of conversion and diversion of corporate opportunity.

PLANK and DAVIDSON, JJ., concur.