GRAPHIC DIRECTIONS, INC.,
a Colorado corporation,
Plaintiff–Appellee,

v.

Robert L. BUSH and F. Dennis
Dickerson, Defendants–
Appellants.

No. 91CA0238.

Colorado Court of Appeals,
Div. V.

June 10, 1993.

Rehearing Denied July 15, 1993.

Certiorari Denied Dec. 13, 1993.

Peggy E. Stevens, Denver, for plaintiff-appellee.

Hutchinson, Black & Cook, William D. Meyer, Heather Ryan, Boulder, for defendants-appellants.

Opinion by Chief Judge STERNBERG.

Defendants, Robert L. Bush and F. Dennis Dickerson, appeal a judgment entered on a jury verdict in favor of Graphic Directions, Inc. (GDI), awarding compensatory and exemplary damages for breach of fiduciary duty. This court reversed the judgment, *Graphic Directions, Inc. v. Bush*, 844 P.2d 1190 (Colo.App.1992), but, on certiorari review, the Supreme Court vacated the judgment of this court and remanded with directions that we reconsider in light of *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378 (Colo.1993). Pursuant to the order of this court the parties submitted supplemental briefs addressing this issue. We have reconsidered the case and again reverse the judgment, vacate the award of actual damages for breach of fiduciary duty, and remand with instructions concerning the award of exemplary damages.

GDI, a small graphics business, was started in 1975 by Grant and Oli Duncan, a husband and wife team. Bush became a shareholder, vice-president, and marketing director in 1983. Dickerson was hired as a free lance artist in 1985. Upon the death of Grant Duncan in 1988, Oli Duncan continued operating the business, Bush retained his position, and Dickerson was appointed to the position of art director.

Dissatisfied with management decisions made by Oli Duncan after her husband's death, Bush, in early 1989, made preparations to start his own business. He discussed his plans with Dickerson and another GDI employee, George L. Roche, Jr., but not with Oli Duncan. On April 17, 1989, the three employees resigned from GDI and immediately began operation of Concepts 3, a competing graphics business.

GDI then filed a complaint asserting numerous causes of action (of which only

three were actually tried), and the three employees counterclaimed alleging defamation. The court denied the defendants' motions for a directed verdict at the close of the plaintiff's case and again at the conclusion of the case.

The jury returned a verdict in favor of GDI against Bush in the amount of $91,400 for breach of fiduciary duty, $2.50 for conversion, and $1,056.30 on the diversion of corporate opportunity claim, and assessed exemplary damages in the amount of $30,-000. It found in favor of GDI on Bush's counterclaim for defamation.

The jury awarded GDI $26,733 on the breach of fiduciary duty claim against Dickerson and assessed exemplary damages in the amount of $5,000. The verdict was in favor of Dickerson on the conversion claim and in favor of GDI on his defamation counterclaim.

The jury found in favor of the third employee, Roche, on GDI's claims and on his counterclaim for defamation, but awarded nominal damages of $1.

The court entered judgment on these verdicts and denied post-trial motions for judgment notwithstanding the verdict or new trial. Bush satisfied the judgment on the conversion and diversion of corporate opportunity claims.

Bush and Dickerson now appeal the judgment on the claim for breach of fiduciary duty, contending that the court erred in submitting it to the jury. The issues before us are whether, as a matter of law, GDI established the elements of this claim and, if not, to what extent the award of exemplary damages may stand.

## I.

■ In order to recover on a claim for breach of fiduciary duty, a plaintiff must prove: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *CJI–Civ.2d* 26:1 (1989).

## A.

■ Dickerson argues that the trial court erred in not submitting to the jury the question of whether a fiduciary relationship existed between himself and GDI. We perceive no error in this regard.

Dickerson recognizes that, under *Jet Courier Service, Inc. v. Mulei,* 771 P.2d 486 (Colo.1989), a duty of loyalty exists between an employer and its employees. However, he contends that because he was an hourly employee with no management or administrative authority, he was not subject to the fiduciary duties outlined in *Mulei.* In his view, the thrust of *Mulei* was to extend a fiduciary duty only to corporate officers and other high-echelon employees. He argues that it would be unjust to impose a duty of loyalty upon an employee who has no authority to act for the corporation and whom the employer may terminate without cause.

The supreme court has recognized that, although the existence of fiduciary relationship is a question of fact, a trial court may resolve the question as a matter of law under certain conditions. *Paine, Webber, Jackson & Curtis v. Adams,* 718 P.2d 508 (Colo.1986). In *Paine, Webber,* after determining that a stock-broker/customer relationship was not *per se* fiduciary in nature, the court held that proof of practical control of a customer's account by a broker would establish the existence of a fiduciary duty. It then concluded that, because the evidence when viewed most favorably to the defendants conclusively demonstrated that the brokers controlled the plaintiff's accounts, the trial court acted properly when it instructed the jury that, as a matter of law, the defendants owed the plaintiff a fiduciary duty.

Here, the effect of the trial court's instructions was to take the question of the existence of a fiduciary duty from the jury. The trial court instructed the jury that, in order for GDI to recover on its claim for breach of fiduciary duty, it must prove that Bush and Dickerson were employees. In reliance on *Mulei, supra,* the court also instructed the jury that: "At all times dur-

ing his employment, an employee is subject to a duty of loyalty to his employer in all matters connected with his employment."

The *Mulei* court based its determination that an employee owes a fiduciary duty to his employer upon Restatement (Second) of Agency § 387 (1958), which provides that an agent is subject to a duty "to act solely for the benefit of the principal in all matters connected with his agency."

However, in *Mulei, supra,* at 492 (fn. 10), the court pointed out that:

Because an employee's duty of loyalty is based in part on agency law, some cases suggest that the higher standard of the duty of loyalty may only be appropriate where an employee has sufficient authority to act for the employer or access to confidential information to make apt the principal/agent analogy.

Additionally, writing in special concurrence, Justice Mullarkey emphasized that when an employee was not an agent of the employer, the duty of loyalty and the test for breach of that duty might be different from that defined by the majority.

The *Mulei* court was concerned with balancing society's interest in free and vigorous economic competition with the competing policy considerations of honesty and fair dealing by employees. The court noted that other jurisdictions have been influenced by similar considerations. *See Chelsea Industries, Inc. v. Gaffney,* 389 Mass. 1, 449 N.E.2d 320 (1983) (employee occupying a position of trust and confidence is bound to act for employer's benefit in all matters within scope of employment); *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 382 A.2d 564 (1978) (fairness dictates that employee not be permitted to exploit trust of employer to obtain unfair advantage in competing in matter concerning employer's business); *Las Luminarias v. Isengard,* 92 N.M. 297, 587 P.2d 444 (1978) (employment relationship is one of trust and confidence; employee has duty to use best efforts on behalf of employer).

Here, as art director, Dickerson handled the technical art aspects of GDI's accounts and supervised the work of other GDI art-

ists. Furthermore, he had ongoing personal contact with many of GDI's most important clients and personally handled their needs.

Although, as the supreme court suggested in *Mulei,* there may be circumstances under which the duty of loyalty does not apply to an employee, under the facts before us, even when viewed in a light most favorable to the defendant, it is clear that Dickerson's position was one of sufficient authority that the principal/agent analogy is apt beyond question.

Accordingly, we conclude that the trial court did not err in instructing the jury that, if it found Dickerson was an employee, it must conclude that he owed a fiduciary duty to GDI.

## B.

Although the evidence was not overwhelming, we conclude that it was sufficient to support the jury's conclusion that Bush and Dickerson breached their fiduciary duty to GDI.

While still employed, an employee may make preparations to compete after termination of his employment and may advise current customers that he will be leaving. However, pre-termination solicitation of customers for a new competing business violates the employee's duty of loyalty. *Jet Courier Service, Inc. v. Mulei, supra.*

Indeed the very heart of the *Mulei* decision is to give vitality to an employee's duty of loyalty to his employer. When *Mulei v. Jet Courier Service, Inc.,* 739 P.2d 889 (Colo.App.1987) was decided by this court, we upheld the trial court's conclusion that an employee's pre-termination meetings with customers did not breach the employee's duty of loyalty. In reversing, the supreme court placed great reliance on the Restatement (Second) of Agency § 393 comment e (1958) and held that this court and the trial court had "applied an unduly narrow legal standard in holding [the employee's] duty of loyalty...." The supreme court ordered the case remanded to the trial court to determine whether the

pre-termination customer meetings were "impermissible solicitation" or "allowable preparation for competition."

■ In denying Bush and Dickerson's motions for a directed verdict and for judgment notwithstanding the verdict, the court determined that circumstantial evidence would permit an inference that they solicited customers prior to terminating their employment with GDI, causing some customers to transfer their business to Concepts 3. Therefore, under the supreme court holding in *Mulei*, the trial court in this case would have erred had it resolved the issue as one of law and granted either a directed verdict or a judgment notwithstanding the verdict.

The record supports the court's conclusion that there was competent evidence to support the verdict that Bush and Dickerson had breached their fiduciary duty to GDI. Thus, although we might have reached a different conclusion, the jury verdict may not be disturbed. *See City of Aurora v. Loveless*, 639 P.2d 1061 (Colo. 1981).

## C.

Nevertheless, although the evidence was sufficient to establish the existence and the breach of a fiduciary duty, we agree with Bush and Dickerson that, as a matter of law, the evidence of damages was insufficient to permit the claim to go to the jury.

■ In our initial opinion, we noted that recovery is allowed once the cause and existence of damages have been established, even though the exact amount of damages may be uncertain or impossible to determine. Such an award cannot, however, be based on speculation or conjecture. Relying on *Tull v. Gundersons, Inc.*, 709 P.2d 940 (Colo.1985), we stated that the claimant is obligated to offer the best evidence available in proving its damages.

In accordance with the supreme court's directive, we now consider our previous analysis in light of *Pomeranz v. McDonald's Corp., supra,* but reach the same result. In *Pomeranz,* the court stated that it had not intended in *Tull* to establish a

requirement that the claimant must always provide the "best evidence available." Rather, the correct standard was that the claimant must submit "substantial evidence, which together with reasonable inferences to be drawn therefrom, provides a reasonable basis for computation of the damage." *Pomeranz v. McDonald's Corp., supra* at 1383.

■ Substantial evidence is that which is probative, credible, and competent. It is evidence that is of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradicting testimony or contradictory inferences. *Allen Co. v. Industrial Commission,* 762 P.2d 677 (Colo.1988).

■ Because recovery is allowed once the cause and existence of damages have been established even though the exact amount of damages may be uncertain or impossible to determine, the claimant is obligated to submit substantial evidence providing a reasonable basis for computation of the damage. *Pomeranz v. McDonald's Corp., supra.*

■ Damages for lost profits are measured by the loss of net profits, meaning net earnings or the excess of returns over expenditures, but not lost gross profits or gross sales revenues. Further, a business has the ability to produce specific historical records showing customary net profits from which a reasonable reliable estimate of its losses can be made. *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960).

■ GDI's evidence concerning its damages consisted of testimony from its accountant and president. The accountant testified that the company lost $173,337 in net *taxable* profits in the eighteen months following the defendants' departure. The president's testimony which referred to the amount and percentage of the sales volume lost from GDI's reduced customer base is not a measure of its lost profits. *See Lee v. Durango Music, supra; see also Western Cities Broadcasting, Inc. v. Schueller,* 849 P.2d 44 (Colo.1993) (Plaintiff failed to

connect evidence of value of business to issue of claimed lost profits from lease involving business.).

Nor did GDI provide financial statements that would have allowed the jury to compare the company's historical income and expenses with the income and expenses in the months following the departure of Bush and Dickerson. *See Lee v. Durango Music, supra.*

■ Additionally, it is axiomatic that before damages for lost profits may be awarded, one who seeks them must establish that the damages are traceable to and are the direct result of the wrong to be redressed. *Isaac v. American Heritage Bank & Trust Co.,* 675 P.2d 742 (Colo. 1984). GDI's accountant testified that he did not have an opinion as to whether the losses were caused by Bush and Dickerson's conduct and stated he had not related his calculation of the loss of net taxable profits to the lost customers. Nor is there evidence establishing a causal link between all the lost sales and Bush and Dickerson's solicitation of customers. At least four of the "lost" customers continued to do some business with GDI, and GDI presented no evidence that eight other "lost" customers did any business with Concepts 3.

Based on our review of the record, we conclude that GDI did not present substantial evidence from which the jury could compute its loss of net profits. *See Pomeranz v. McDonald's Corp., supra.* Further, it did not establish that any such lost net profits were traceable to and the direct result of Bush and Dickerson's conduct. *See Issac v. American Heritage Bank & Trust Co., supra.* Thus, GDI's evidence was insufficient, as a matter of law, to establish damages; consequently the damage award for lost profits cannot stand.

## II.

The jury was instructed that if it awarded actual damages on GDI's claims for breach of fiduciary duty, conversion, *or* diversion of corporate opportunity, it should consider whether exemplary damages should be awarded and, if so, that it could assess a reasonable sum not to exceed the amount awarded as actual damages. However, the record does not indicate the basis upon which the jury determined the amounts of exemplary damages.

### A.

Because the jury found in favor of GDI against Dickerson only on the claim for breach of fiduciary duty, and because we have determined that the actual damages award on that claim cannot stand, it follows that the exemplary damages also cannot stand. *See Concord Realty Co. v. Continental Funding Corp.,* 776 P.2d 1114 (Colo.1989) (there can be no award of exemplary damages in absence of successful underlying claim for actual damages).

### B.

■ However, the jury found in favor of GDI against Bush on all three claims, and he has satisfied judgments for conversion and diversion of corporate opportunity. Consequently, exemplary damages based on these claims are allowable. *Concord Realty Co. v. Continental Funding Corp., supra.*

Nevertheless, the amount of reasonable exemplary damages may not exceed an amount equal to the amount of the actual damages awarded. Section 13–21–102(1)(a), C.R.S. (1987 Repl.Vol. 6A). Thus, the most that can be awarded here is an amount equal to the actual damages awarded GDI against Bush on the remaining claims of conversion and diversion of corporate opportunity.

Accordingly, the judgment against Bush and Dickerson for breach of fiduciary duty is reversed, and the cause is remanded with directions to vacate the existing awards for actual and exemplary damages and to enter judgment in favor of GDI against Bush for exemplary damages in an amount equal to the actual damages awarded on the claims of conversion and diversion of corporate opportunity.

PLANK and DAVIDSON, JJ., concur.