24CA2223 Abrams v Star Builders 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2223
City and County of Denver District Court No. 23CV541
Honorable Jon J. Olafson, Judge

Abrams & Associates, LLC,

Plaintiff-Appellant and Cross-Appellee,

v.

Star Builders, LLC, and Aaron LaPedis,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Resnick & Louis, P.C., Clayton D. Manceaux, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

Sean M. McDermott, Denver, Colorado, for Defendants-Appellees and Cross-Appellants

¶ 1    Plaintiff, Abrams & Associates, LLC (the firm), appeals the court's judgment in favor of defendants, Star Builders, LLC, and Aaron LaPedis (collectively, Star Builders), on Star Builders' counterclaim for breach of fiduciary duty.  We affirm.

## I.    Background

¶ 2    In 2021, the firm and Star Builders entered into a contract for legal services.  The firm agreed to represent Star Builders in a construction defect dispute between Star Builders and a plumbing company in Jefferson County Case No. 22CV30823.[1]  Either party could terminate the contract by written notice.  The contract provided that "if permission for withdrawal [wa]s required by the court, the [f]irm shall apply for such permission and termination shall coincide with the court order for withdrawal."

¶ 3    Star Builders' managing partner, LaPedis, was dissatisfied with the firm's work and expressed concerns with the way the firm was handling the underlying case.  On February 22, 2023, LaPedis emailed Robert Abrams and Kyle Thompson, attorneys at the firm, and told them to "put a hard stop on everything."  The email also

---

[1] The litigation later involved a third-party insurance brokerage firm as well.

1

indicated that Star Builders had a new attorney who would be handling the case moving forward.

¶ 4     On February 23, the firm sent a demand letter to Star Builders' insurance company, which indicated that "[the firm] continues to represent Star Builders."  The firm sent Star Builders a copy of the demand letter on February 24 and apprised it of the status of the underlying case.  On February 26, Abrams responded to LaPedis's February 22 email and agreed to stop all work, told LaPedis that new counsel could file a notice of substitution of counsel in the case, and that the firm expected Star Builders to pay its outstanding fees.  On February 28, Abrams sent LaPedis another email informing LaPedis that he had not heard from new counsel.  That same day, Abrams forwarded LaPedis a notice of the propounded discovery and indicated that the "new lawyer can assist in answering this discovery."  The next day, LaPedis asked Abrams if he could respond to the discovery issues before transferring Star Builders' case to new counsel.  On March 3, LaPedis called Abrams, asking if they could "patch things up" and whether the firm could remain on the case.

¶ 5    On March 6, the firm filed a motion to withdraw from the underlying case.[2]  The motion indicated that the firm had conferred with Star Builders and that the motion was unopposed, but LaPedis testified that neither Abrams nor Thompson had conferred with him.  That same day, LaPedis emailed Abrams to check in and to ask if he was moving forward with the case.[3]  On March 7, Abrams sent LaPedis a copy of the firm's motion to withdraw.  The firm filed an amended motion to withdraw with the court on March 7, again representing that Star Builders did not oppose withdrawal.  That

---

[2] The motion to withdraw filed in Case No. 22CV30823 was not included in the record on appeal.  Nevertheless, we take judicial notice of it.  *See Vento v. Colo. Nat'l Bank*, 985 P.2d 48, 52 (Colo. App. 1999) ("[A] court may take judicial notice of the contents of court records in a related proceeding.").

[3] The record is missing several trial exhibits detailing the parties' communications, including this email.  We admonish the firm's counsel for failing to comply with the obligation to file all trial exhibits as part of the record despite the district court's warning that if they weren't included by the due date, "the certified record w[ould] be sent to the appellate court without them."  The party asserting a trial court error bears the burden of presenting a record which discloses the error.  *Hunter v. Colo. Mountain Jr. Coll. Dist.*, 804 P.2d 277, 278 (Colo. App. 1990).  When the appellant has failed to provide a complete record on appeal, "it is well settled that appellate courts must presume the trial court's findings and conclusions are supported by the evidence." *People v. Helmstetter*, 914 P.2d 474, 477 (Colo. App. 1995).  We therefore presume that the missing trial court exhibits support the trial court's findings of fact and conclusions of law.

same day, the Jefferson County District Court granted the firm's original motion to withdraw.

¶ 6    In June 2023, the firm filed a complaint, alleging that Star Builders failed to pay for legal services as provided by the contract. Star Builders filed counterclaims, alleging breach of fiduciary duty and breach of contract. The counterclaims related to the firm's withdrawal in Case No. 22CV30823.

¶ 7    The court ultimately found that Star Builders failed to pay the firm $3,395 for "reasonably incurred legal services." With respect to the counterclaims, the court found in the firm's favor on the breach of contract claim and in Star Builders' favor on the breach of fiduciary duty claim. The court concluded that the firm breached its fiduciary duty to Star Builders when it withdrew as counsel in Case No. 22CV30823. The court found that as Star Builders' counsel, the firm was in a position of trust with its client and breached its fiduciary duties to be truthful in communications with the court and to provide its client with sufficient information to make an informed decision about withdrawal. The court awarded Star Builders $17,797 in damages, including exemplary damages — which the court concluded were warranted, given its finding that

4

the firm willfully and wantonly violated multiple rules of professional conduct and rules of civil procedure.

## II.    Analysis

¶ 8    The firm contends that the court erred by (1) denying its motion to dismiss under section 13-20-602, C.R.S. 2025;[4] (2) concluding that no expert testimony was necessary to prove Star Builders' fiduciary duty claim; (3) finding that the firm made the decision to withdraw; and (4) finding that the firm failed to comply with its duty of candor to the tribunal.  We disagree with each contention.

### A.    Certificate of Review and Expert Testimony

¶ 9    The firm contends that the court erred by (1) denying its motion to dismiss Star Builders' counterclaims for failure to file a certificate of review under section 13-20-602(4) and (2) determining that no expert testimony was needed to establish that the firm

---

[4] The firm's opening brief incorrectly cites "C.R.S. § 13-22-602," which does not exist.  The correct statute to which we will refer is section 13-20-602, C.R.S. 2025.  Because the statute has not changed since this action was filed in the district court, all citations are to the 2025 statute.

breached its fiduciary duty. We address these arguments together and disagree with both.

### 1. Additional Facts

¶ 10 After the firm filed its complaint, Star Builders filed counterclaims for breach of contract and breach of fiduciary duty, alleging the following:

- After spending money on legal fees and determining the goals of the case weren't being met, LaPedis sent the firm an email on February 22, 2023, asking that a "hard stop be put on the case" and explaining that another attorney would handle the case.

- After LaPedis sent the email, he was advised not to change attorneys, given the imminent expert disclosure deadlines and upcoming trial in Case No. 22CV30823.

- On February 27, the attorney who was supposed to replace the firm notified LaPedis that he would not represent Star Builders.

- Around March 3, LaPedis had a conversation with Abrams where the two agreed to "patch up any differences" and work

together.  Abrams was on vacation but told LaPedis that he would contact him on Monday, March 6.

- Abrams did not contact LaPedis on March 6; instead, the firm filed a motion to withdraw in Case No. 22CV30823.  The motion to withdraw indicated that Star Builders had instructed the firm to withdraw, that the firm had conferred with Star Builders, and that Star Builders did not oppose the withdrawal.  The motion did not mention subsequent communications between the parties or the conversation that LaPedis had with Abrams.

- LaPedis emailed Abrams on March 6 to "check in" based on their prior conversation that the firm would remain on the case.

- On March 7, Abrams responded to LaPedis's email, citing LaPedis's February 22 email ordering the firm to stop work.  Abrams also sent LaPedis a copy of the motion to withdraw.

- The firm filed an amended motion to withdraw on March 7, but the amended motion didn't correct the "false statement" that Star Builders had instructed the firm to withdraw.  The

motion also didn't mention that LaPedis had contacted Abrams and expected the firm to continue handling the case.

- The court granted the motion to withdraw on March 7.

- Because of the firm's withdrawal, Star Builders had to obtain new counsel in Case No. 22CV30823, seek a continuance, and incur over $12,000 for substitute counsel to "get up to speed" on the case.

Star Builders claimed that the motion and the amended motion to withdraw violated C.R.C.P. 121, section 1-1(2)(b), which details the procedures that an attorney must follow before a court may allow the attorney to withdraw from a case, and C.R.C.P. 121, section 1-15(8), which requires moving counsel to consult with the opposing party before filing a motion.

¶ 11    Eleven months after Star Builders filed its counterclaims, the firm moved to dismiss them for failure to file a certificate of review as required by section 13-20-602.[5]  Because Star Builders' claims for breach of contract and fiduciary duty alleged inadequate and improper professional legal representation, the firm argued that a

---

[5] The court previously denied the firm's motion to dismiss Star Builders' counterclaims pursuant to C.R.C.P. 12(b)(5).

8

certificate of review was warranted. And because one was not filed, the counterclaims had to be dismissed. *See* § 13-20-602(4) ("The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim.").

¶ 12  In response, Star Builders argued that a certificate of review was unnecessary because expert testimony wasn't needed to establish that the firm had acted improperly based on "the untruths" contained in the motion and amended motion to withdraw.

¶ 13  The court held a hearing to resolve several motions, including the firm's motion to dismiss for failure to file a certificate of review. The court ordered the parties to prepare trial briefs on the issue and to be ready to discuss the issue at trial. At trial, Abrams renewed the motion to dismiss, which the court denied.

¶ 14  The court noted that, based on case law, whether a certificate of review was required hinged on whether an expert witness was necessary "to establish the standard of care." The court determined that expert testimony wasn't required "to establish the standard of care" here because Star Builders' claims against the firm pertained

to the motion and amended motion to withdraw "and whether or not the veracity of those motions w[as] correct or incorrect." The court found that the standard of care "was so apparent on its face that . . . you don't need expert testimony" and that "the negligence was so apparent that no certificate need[ed] to be filed."

¶ 15     In support, the court looked to C.R.C.P. 11 and stated that it requires an attorney to sign and confirm "that everything [] filed [with the court] is correct"; the court also looked to Colo. RPC 3.3(a), "which says that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal [by] the lawyer."

### 2.     Standard of Review and Applicable Law

¶ 16     We review de novo a district court's ruling on a motion to dismiss. *Patterson v. James*, 2018 COA 173, ¶ 16.  We review the district court's ruling requiring or dispensing with a certificate of review for an abuse of discretion. *Woo v. Baez*, 2022 COA 113, ¶ 13.  A court abuses its discretion when it misapplies or misinterprets the law, or when its decision is arbitrary, unreasonable, or unfair. *Est. of Ford v. Eicher*, 220 P.3d 939, 942

10

(Colo. App. 2008), *aff'd*, 250 P.3d 262 (Colo. 2011). "[T]he decision of the trial court that a claim may proceed without the filing of a certificate of review will not be disturbed upon appellate review unless the plaintiff's" reason for not filing the certificate lacked arguable merit. *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 627 (Colo. 1999).

¶ 17     To prove a claim for breach of fiduciary duty, the plaintiff must prove that (1) the defendant was acting as a fiduciary; (2) the defendant breached its fiduciary duty; (3) the plaintiff incurred damages; and (4) the damages incurred were caused by the defendant's breach of the fiduciary duty. *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993). "Breach of fiduciary duty claims are in some, but not all, contexts basically negligence claims incorporating particularized and enhanced duty of care concepts . . . ." *Martinez v. Badis*, 842 P.2d 245, 251-52 (Colo. 1992). Some courts recognize a distinction between breach of fiduciary duty claims and attorney negligence claims, seeing "fiduciary obligations as part of a standard of conduct and professional negligence as part of a standard of care." *Aller v. Law Off. of Carole C. Schriefer, P.C.*, 140 P.3d 23, 27 (Colo. App. 2005).

¶ 18     A party filing a professional negligence claim must file a certificate of review within sixty days of the commencement of the claim, certifying that they have "consulted a person who has expertise in the area of the alleged negligent conduct," and that the person "has reviewed the known facts" and concluded that the claim or counterclaim "does not lack substantial justification." § 13-20-602(1)(a), (3)(a); *see Woo*, ¶ 14.  The purpose of section 13-20-602 is to prevent frivolous lawsuits or baseless professional malpractice actions.  *State v. Nieto*, 993 P.2d 493, 503 (Colo. 2000).

¶ 19     A certificate of review is only necessary, however, where the professional negligence claim requires expert testimony to establish a prima facie case.  *Giron v. Koktavy*, 124 P.3d 821, 825 (Colo. App. 2005).  Not all professional negligence claims require expert testimony.  *Martinez*, 842 P.2d at 249; *cf. Kelton v. Ramsey*, 961 P.2d 569, 571 (Colo. App. 1998) ("Except in the clearest cases, expert testimony is necessary to establish the standards of acceptable professional conduct in legal malpractice cases.").

¶ 20     The touchstone for determining whether expert testimony is necessary is whether the testimony "will provide assistance on a matter not within the knowledge or common experience of people of

12

ordinary intelligence." *Zick v. Krob*, 872 P.2d 1290, 1294 (Colo. App. 1993).  When the judge serves as the trier of fact and testimony concerns matters of legal practice, the trial court is "in a particularly appropriate position to assess whether [expert] testimony would be helpful in its deliberations." *Id.*

### 3.    Analysis

¶ 21    The firm contends that all claims based upon alleged professional negligence, regardless of the claim's formal designation, require a certificate of review.  *See Martinez*, 842 P.2d at 251-52.  Therefore, it argues, the court erred by denying the firm's motion to dismiss under section 13-20-602(4), which mandates dismissal of the counterclaims for failure to file a certificate of review.  We disagree.

¶ 22    The crux of Star Builders' claim is not for professional negligence based on a standard of care or malpractice; rather, its claim is that the firm breached its fiduciary duty when it filed a motion and an amended motion to withdraw with the court containing the following misrepresentations: (1) the motions were unopposed, (2) the firm informed Star Builders that it intended to withdraw, and (3) the firm's withdrawal could be accomplished

13

without any material adverse effects to Star Builders. In concluding that the firm breached its fiduciary duty, the court focused on the rules governing attorney conduct and not on the standard of care or degree of knowledge, skill, or judgment ordinarily possessed by attorneys in the legal field. *See Aller*, 140 P.3d at 28 ("We can foresee circumstances where a breach of fiduciary duty may be characterized as something other than professional negligence, for example, where an attorney abuses a position of trust with the client . . . .").

¶ 23    For instance, the court looked to C.R.C.P. 121, section 1-1(2)(b), which provides that an attorney's request to withdraw may not be granted until the motion is served on the client and other parties, and either both the client and all counsel for the other parties consent in writing at or after the time of the service of the motion, or fourteen days have passed. It also pointed out that under C.R.C.P. 11, an attorney's signature on a pleading represents "that to the best of [their] knowledge, information, and belief, . . . [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument." Further, the court acknowledged Colo. RPC 3.3(a)(1), which provides that "[a] lawyer shall not

knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made." These rules govern the baseline for attorney conduct, trustworthiness, and honesty; they have nothing to do with knowledge, skill, or legal expertise.

¶ 24 Expert testimony wasn't necessary to determine whether the firm breached its fiduciary duty. The court determined that the rules at issue "pertain[ed] to an [attorney's] duties to a court and to the client about filed pleadings and withdrawal [that] are elementary, clear, and foundational for all attorneys." And the question here — whether the firm breached its fiduciary duty to its client when it knowingly made false statements in its motions to withdraw — was so obvious on its face that Star Builders' expert testified that the court could decide the matter without his expertise.

¶ 25 In *Giron,* a division of this court determined that expert testimony was not required to establish negligence or breach of a fiduciary duty when an attorney failed to file a claim within the applicable statute of limitations because the skill required to determine whether the statute had run was within a layperson's

common knowledge. *Giron,* 124 P.3d at 825. Like the statute of limitations issue in *Giron,* the issue here is whether the firm breached the fiduciary duty it owed Star Builders — to be truthful to the court — when it filed its motion and amended motion to withdraw containing false statements. Because the question was obvious on its face and the rules governing attorney conduct and candor are commonly understood, no expert testimony was necessary.

¶ 26 The court did not abuse its discretion by concluding that expert testimony and a certificate of review were unnecessary, given the record and the basis of the fiduciary duty claim. Accordingly, we conclude that the court properly denied the firm's motion to dismiss Star Builders' claim for breach of fiduciary duty under section 13-20-602(4).

B. The Court's Findings Are Supported by the Record

¶ 27 The firm contends that, contrary to the evidence presented at trial, the court erroneously found that the firm made the decision to withdraw as counsel of record and failed to comply with its duty of candor to the court. We disagree.

16

### 1. Standard of Review and Applicable Law

¶ 28    We defer to the factual findings of the district court unless they are clearly erroneous. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008). "A court's factual findings are clearly erroneous only if there is no support for them in the record." *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

¶ 29    Additionally, as we previously mentioned, the firm failed to include in the record several trial exhibits detailing email exchanges between the parties. We therefore presume that the missing evidence supports the court's findings of fact and conclusions of law. *Love v. Klosky*, 2016 COA 131, ¶ 18, *aff'd on other grounds*, 2018 CO 20.

### 2. The Court Did Not Err by Finding that the Firm Made the Decision to Withdraw

¶ 30    The firm contends that Star Builders "unequivocally" directed it to cease litigation activities in the underlying matter when LaPedis sent his February 22 email to Abrams and Thompson ordering the firm to "put a hard stop on everything." In support, the firm argues that the instruction was accompanied by multiple accusations that the firm tried to run up costs and fees and that

17

the email named the attorney who was going to replace the firm. It further contends that Star Builders did not submit evidence indicating that it objected to the firm's withdrawal.

¶ 31    The firm's contentions are misplaced. The firm doesn't acknowledge LaPedis's requests for it to continue representing Star Builders or the work that it continued to perform after the February 22 email.

¶ 32    As the court found, the February 22 email did not ask the firm to withdraw from representation; it just asked the firm to stop work and provided the name of new counsel. LaPedis testified that the other attorney declined to represent Star Builders and that because of the impending deadlines in the underlying matter, LaPedis was advised to work things out with the firm. He therefore called Abrams on March 3, asking the firm to remain as counsel. Abrams was on vacation, but LaPedis testified that the two agreed Abrams would call on Monday, March 6. While Abrams gave conflicting testimony, the court found that his testimony wasn't credible. We defer to the court's determinations of credibility. *See In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) ("It is the responsibility of the trial court as the trier of fact to determine the

18

credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence."). LaPedis also testified that he paid the firm's outstanding fees to induce the firm to stay on the case and that he emailed Abrams on March 6 to "check in" to see if the firm was moving forward with the case.

¶ 33 Likewise, several of the firm's actions after the February 22 email are contrary to the stop work order and undermine the firm's argument that Star Builders terminated the relationship. For instance, on February 24, Thompson had a phone call with opposing counsel in Case No. 22CV30823 to negotiate a settlement and continued to prepare a demand letter, which noted that the firm represented Star Builders. That same day, Thompson emailed LaPedis a copy of the demand letter, asked him to make edits, and gave LaPedis an update on his conversation with opposing counsel. On February 28, the firm had not received new counsel's information, so Abrams emailed LaPedis, copying Thompson and a paralegal, stating, "BTW, we have not seen nor heard from new counsel under a subst[itution] of counsel[;] . . . if we have no [substitution] of counsel today, [withdraw] from [LaPedis's] case per his instructions." The comment to withdraw if no substitution of

counsel was received indicates that the firm was waiting for new counsel to enter an appearance before withdrawing. The firm continued to work on the case and did not file a motion to withdraw immediately following the "hard stop" email; instead, it waited nearly two weeks before filing a motion.

¶ 34 Moreover, the firm's argument that Star Builders failed to submit evidence that it objected to the firm's withdrawal is misleading. At trial, LaPedis testified that he "felt [he] had no recourse" when he learned of the firm's motion to withdraw and that he "just had to accept it [and] . . . was not told that [he] could counter it or make an objection." And when LaPedis learned that the court had granted the motion one day after it was filed, he testified that he "was devastated." The testimony supports the court's findings that Star Builders and LaPedis were unaware that the firm had filed its motion to withdraw and that Star Builders did not consent to the motion.

¶ 35 Based on our review of the record, the timeline, and the parties' testimony, ample evidence supports the court's finding that the firm made the decision to withdraw as legal counsel in the underlying case.

20

### 3. The Court Did Not Err by Finding That the Firm Failed to Comply With Its Duty of Candor to the Tribunal

¶ 36    As mentioned above, Colo. RPC 3.3 (a)(1) states that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

¶ 37    The original motion to withdraw indicated that the firm "conferred with . . . its client, Star Builders, LLC, with respect to the relief requested in this Motion.  Star Builders, LLC is unopposed." Thompson testified that he drafted and filed the motion but did not discuss it with LaPedis before filing it.  The motion also noted that Star Builders "hired new counsel and has instructed [the firm] to withdraw as counsel of record."

¶ 38    Although the parties discussed new counsel during their email exchanges, the firm was never instructed to withdraw.  Further, Thompson testified at trial that the firm hadn't heard from new counsel and that new counsel had not entered an appearance when he filed the motion to dismiss.  The firm also certified that it complied with the notice requirements by sending the motion via

21

email and standard mail. However, the court found that LaPedis did not receive the motion before it was filed.

¶ 39 The court did not err in finding that the firm's representations were knowingly false because there was no conferral with Star Builders, the firm had not been instructed to withdraw, and it did not provide Star Builders with a copy of the motion to withdraw until after the motion was filed.

¶ 40 Additionally, the amended motion to withdraw filed on March 7 did not correct these misrepresentations. Although the amended motion clarified that Star Builders "informed undersigned to stop all work and notified [the firm] of potential new counsel," and that the firm "informed [Star Builders] it intends to withdraw as counsel of record," the amended motion still indicated that the motion was unopposed, the parties had conferred, and the firm's withdrawal could be accomplished without material adverse effect to Star Builders.

¶ 41 The trial court's findings that the firm knowingly made false representations to the Jefferson County District Court is supported by ample evidence in the record. We therefore discern no error with its finding that the firm violated its duty of candor.

### III.   Request for Sanctions and Attorney Fees

¶ 42    Star Builders requests sanctions under C.A.R. 38(d),[6] alleging that the firm's appeal is a continuation of frivolous, groundless, and vexatious proceedings.  C.A.R. 38(b) grants appellate courts the authority to award damages if an appeal is deemed frivolous.  An appeal may be deemed frivolous if there is no appealable issue because the judgment below "was so plainly correct and the legal authority contrary to appellant's position is so clear that there is really no appealable issue," or when an "appellant's misconduct in arguing the appeal" justifies deeming the appeal frivolous.  *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006) (citation omitted).  Here, while we disagree with the firm's arguments, we don't think the appeal is frivolous and decline to award damages.

¶ 43    Likewise, although we may impose sanctions, including attorney fees, under C.A.R. 38(a) for failure to comply with the appellate rules, including those pertaining to providing the trial

---

[6] We note that there is no C.A.R. 38(d), but C.A.R. 38(b) provides that we may award damages, including attorney's fees, if we determine that an appeal is frivolous.

court record, we decline to impose sanctions even though the firm failed to include several trial exhibits in the record.

## IV. Disposition

¶ 44 The judgment is affirmed.

JUDGE FOX and JUDGE BROWN concur.