Cynthia KUTA and Marius
DeGabriele, Petitioners,

v.

JOINT DISTRICT NO. 50(J) OF the
COUNTIES OF DELTA, GUNNISON,
MESA AND MONTROSE, Respondent.

No. 89SC328.

Supreme Court of Colorado,
En Banc.

Oct. 9, 1990.

Rehearing Denied Oct. 29, 1990.

**380**

Martha R. Houser, Gregory J. Lawler, Michelle Smith Rabouin, William J. Maikovich, Aurora, for petitioners.

Clay & Dodson, P.C., Aaron R. Clay, Delta, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

The petitioners, Cynthia Kuta and Marius DeGabriele, assert that the respondent, Joint District No. 50(J) of the counties of Delta, Gunnison, Mesa, and Montrose (District), breached its teaching contracts by not complying with its RIF (reduction in force) policy.[1] The trial court granted summary judgment in favor of the District, and the court of appeals affirmed in an unpublished decision, *Kuta v. Joint Dist. No. 50(J)*, No. 87CA1794 (April 6, 1989). Because we conclude that the RIF policy had not been incorporated into the contracts of these nontenured teachers, we affirm.

I

The petitioners had annual teaching contracts with the District for the 1984–85 and 1985–86 school years. In the spring of 1986, because of adverse economic conditions and declining enrollment, the District elected not to renew the petitioners' contracts, as well as those of 64 other nontenured teachers in the District.

The affected teachers received written notice of nonrenewal on March 21, 1986. After receiving the notice, the petitioners learned that the District had an administrative policy manual which included a provision entitled "Reduction in Professional Staff Work Force," which was in effect throughout the period of petitioners' employment.[2] The RIF policy provided in pertinent part that:

> The number of teaching positions in the district shall be reduced only as a result of a substantial reduction in school enrollment, a substantial reduction in funds available, or a major educational innovation.
>
> . . . .
>
> Seniority shall mean the number of years of professional service in this district. If a teacher is certified in a subject area at the time of a reduction in force, though he might not have taught in that area, his total seniority will prevail. . . .
>
> 5. Those teachers who are laid off as a result of the reduction in force will be:
>
> a) considered on leave of absence for one year
>
> b) allowed to remain in the insurance program at their own expense for one year
>
> c) given first consideration for substitute teaching for one year.
>
> 6. Any teachers who are recalled in the following year from the reduction in force will be considered strictly on a seniority basis.

In April 1986, the District rehired several nontenured teachers, some of whom had less seniority than the petitioners. The petitioners, who were not rehired, brought suit, alleging breach of employment contract because of the District's failure and

---

1. DeGabriele also asserted a claim of interference with employment and business opportunity. This claim was subsequently withdrawn without prejudice and is therefore not before us.

2. Individual copies of this manual were not provided to the petitioners. Two copies of the manual were available in the building where Kuta worked. No copies were maintained in the building where DeGabriele worked.

refusal to apply the RIF policy to them. The District moved for summary judgment on the breach of contract claim.

The trial court, relying on our decision in *Continental Air Lines v. Keenan*, 731 P.2d 708 (Colo.1987), concluded that the RIF policy was not part of petitioners' contracts under either the theories of breach of express contract, breach of implied contract, or promissory estoppel, and granted the District's motion. The court of appeals affirmed, concluding that the contracts were unambiguous and did not expressly incorporate the RIF policy. It also concluded that the RIF policy was not incorporated into the contracts under the doctrine of promissory estoppel because petitioners were not aware of the RIF policy until after the nonrenewal of their contracts. Therefore, they "could not have assented to the policy as a term of their contracts nor relied upon it to extend their contracts to include a rehiring provision." *Kuta v. Joint School Dist. No. 50(J)*, No. 87CA1794, slip op. at 3 (April 6, 1989).

## II

The employment contract signed by the petitioners consisted of four paragraphs and was drafted by the District. The first paragraph stated the applicable one-year term of the contract and provided for both the amount and manner of payment of the employee's salary. The second paragraph provided that the employee would be included in the District's salary schedule and would be subject to any changes adopted by the District. The third paragraph enu-

merated the employee's duties.[3] Finally, the fourth paragraph listed the "extra services" that the employee agreed to provide.[4]

The petitioners' claim rests on the fact that one of the duties enumerated in the third paragraph of the employment contract provided that they were to "observe the official policies of said contract." They contend that this provision requires the employee to comply with the District's administrative policies and procedures and is ambiguous as to the District's obligations. Therefore, petitioners argue, the District is also bound by this provision, because basic principles of contractual interpretation require that this ambiguity be construed against the drafter of the contract. Further, the petitioners argue that *Continental Air Lines v. Keenan*, 731 P.2d 708 (Colo.1987), is not applicable because they were employed pursuant to a fixed-term contract and thus were not "at will" employees.

The District argues that there was no incorporation of the RIF policy into the employment contracts. It also contends that the RIF policy was applicable only to tenured teachers. Therefore, the District concludes that its election not to rehire petitioners was a proper exercise of its discretion.

## A

■ Initially, we must interpret the petitioners' contracts to determine whether the District's RIF policy has been expressly incorporated into their contract.[5] Well-es-

---

3. The third paragraph of the employment contract provided that:

   The conditions of this appointment include: that you sign and return this contract within ten days from this date; that you observe the official policies of said contract; that you use your best efforts in preserving and protecting school property; that you will make promptly and accurately all reports that may be required of you by the Superintendent; and that you will abide by such assignment as to rooms, grades and work as the Superintendent may make; and that upon request you will furnish the Board a certificate showing that you are free from tuberculosis and upon request you will furnish the Board a certificate showing that you are in good physical

   and emotional health. The Board may revoke or cancel this contract at any time for incompetence, neglect of duty, immorality, insubordination, or other good and just cause, in accordance with the Teacher Employment, Dismissal and Tenure Act of 1967.

4. For example, DeGabriele agreed to serve as an assistant high school track coach, and Kuta agreed to coach girls basketball and volleyball.

5. The petitioners contend that *Subryan v. Regents of the Univ. of Colorado*, 698 P.2d 1383 (Colo.App.1984), is applicable. In *Subryan*, the issue was whether the regents were required to follow a policy they promulgated which was admittedly applicable to the employee. Here,

tablished principles guide our resolution of this issue. The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation. *Bevsek v. Huerfano School Dist. RE–1,* 728 P.2d 325 (Colo.App.1986). Extrinsic evidence is only admissible to prove intent where the terms of the contract are ambiguous. *Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978). The fact that the parties disagree as to its meaning does not in itself create an ambiguity. *Id.* However, any uncertainty in a contract prepared exclusively by the employer must be construed against the employer. *Schaefer v. Horton–Cavey,* 692 P.2d 1132 (Colo.App.1984).

The only reference to the District's policies is contained in the first sentence of the third paragraph of the contract which addresses the teachers' obligations. The sentence in question deals exclusively with what the teachers are required to do. Even assuming this provision required the teachers to comply with the District's administrative policies, the language of this provision provides no indication that the District intended to create a reciprocal obligation. When the contract is viewed in its entirety, this oblique reference to the District's "official policies" cannot reasonably be viewed as a manifestation by the District of a willingness to incorporate the RIF policy into the contract.

## B

■ Petitioners also assert that they are entitled to recovery based upon theories of implied contract and promissory estoppel. Although the petitioners are not "at will" employees, our analysis in *Continental Air Lines v. Keenan,* 731 P.2d 708 (Colo. 1987), is helpful to the resolution of these claims. In *Keenan,* we held that an employee may be able to enforce certain termination procedures in an employee manual if he can show that he is entitled to relief under either an implied contract or promissory estoppel theory. An employee may be entitled to relief pursuant to nor-

mal contractual principles if he can demonstrate:

> [F]irst, that in promulgating the termination procedures the employer was making an offer to the employee—that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain, Restatement (Second) of Contracts § 24 (1981)—and second, that his initial or continued employment constituted acceptance of and consideration for those procedures.

*Id.* at 711.

■ To be effective, an offer must be communicated. The District's limited distribution of its administrative policies undercuts the assertion that it manifested a willingness to enter into a bargain. Further, the petitioners were not aware of the RIF policy until after they received notice that their contracts would not be renewed. Therefore, prior to learning of this policy, they had no expectation that their "assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Id.* at 711.

■ However, in some cases, continued employment may furnish the requisite assent and consideration necessary to make these procedures binding upon the employer. *Id.* The petitioners acknowledge that they learned of the RIF provisions shortly after receiving notice of the nonrenewal of their contracts. After receiving this notice, they continued to work for the District until the expiration of their teaching contracts. However, in doing so they were merely fulfilling their preexisting contractual obligations. Continued employment in this situation does not constitute the required acceptance and consideration necessary to incorporate the RIF provisions into their contracts.

■ Alternatively, the petitioners may recover under the theory of promissory estoppel if they can demonstrate that:

---

however, the issue is whether the promulgated policy is applicable to the petitioners.

[T]he employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures.

*Id.* at 712.

Here the petitioners have not shown any detrimental reliance on the RIF policy. The record indicates that they were not even aware of the policy until after they received notice of nonrenewal of their contracts. Under these circumstances, their promissory estoppel claim must also fail.

Accordingly, the judgment is affirmed.

QUINN, J., specially concurs.

MULLARKEY, J., dissents and LOHR, J., joins in the dissent.

Justice QUINN specially concurring:

I specially concur in the judgment. The issue raised in this case is one of contractual interpretation, and I agree with the majority that the reference in the contract to the school district's "official policies" cannot reasonably be construed as a manifestation of a contractual intent to incorporate into the contract of nontenured teachers the reduction-in-force policy with respect to rehiring on a seniority basis. A contrary holding, in my view, would result in bestowing on the plaintiff-teachers, who were hired on an annual basis, the practical equivalent of a tenured right of seniority with respect to rehiring. In the absence of contractual language manifesting an intent to incorporate such a provision into the annual contracts, or alternatively in the absence of an adequate basis to imply such a provision under either the implied contract or promissory estoppel theories developed in *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987), there is no legal or factual basis to engraft the reduction-in-force policy onto the contracts under consideration. The majority, in my view, adequately points out the reasons why neither the implied contract nor the promissory estoppel theories of *Keenan* apply here.

I view this case as substantively distinct from the *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984). In that case we addressed whether Donahue, who was a state probationary employee, had the right to a predisciplinary hearing, pursuant to Personnel Rule 7–3–1, 4 C.C.R. 801–1 at 80 (1977), before being discharged for unsatisfactory job performance prior to the expiration of her one-year probationary period of employment, even though Donahue as a probationary employee could have been discharged for unsatisfactory job performance at any time during the probationary period. In holding that Donahue had a right to a predisciplinary hearing, we relied on the plain terms of Personnel Rule 7–3–1, which stated:

When information received by the appointing authority indicates the possible need to administer disciplinary action, he shall meet with the employee involved, present the information that has come to his attention, and give the employee an opportunity to admit or present information regarding mitigating circumstances.

Because Personnel Rule 7–3–1 was not limited to certified employees only, we declined to read such a limitation into the rule and accorded the rule independent due process significance with respect to the procedural rights of both probationary and certified employees.

In contrast to the facts in *Donahue*, we are not dealing here with a claim that the reduction-in-force policy creates a constitutionally vested property interest in the plaintiff-teachers or, for that matter, that the policy has any legal significance independently of the terms of the annual contracts. Rather, we deal in this case with a contractual claim based on annual contracts that make no reference whatever to the seniority rehiring provisions of the reduction-in-force policy of the school district. Indeed, the plaintiff-teachers do not attribute any legal significance to the reduction-in-force policy independently of the annual contracts, nor do they rely upon or even cite *Donahue* in their brief. Because

their claim sounds in contract, not due process of law, and because the majority correctly answers their contentions, I concur in the judgment.

Justice MULLARKEY dissenting:

The issue here is whether a reduction in professional staff work force (RIF) policy promulgated and adopted by the district board of education pursuant to statutory authority applied to the petitioners who were probationary teachers laid off after the policy went into effect. The majority opinion relies on the analysis in *Continental Air Lines v. Keenan*, 731 P.2d 708 (Colo.1987), involving an at-will, private employee, to find that the RIF policy did not apply to the petitioners.

While certainly there are many similarities between the legal principles applicable to private employment and those applicable to public employment, public employment is subject to the added requirement of procedural due process which does not apply to private employment. I agree that a RIF policy adopted by a private employer is subject to the contract and promissory estoppel analysis of *Keenan* and other related cases. *See, e.g., Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). However, a personnel policy which has been properly adopted by a governmental entity is subject to a different analysis. Under concepts of procedural due process, such a policy is binding on the public employer and enforceable by the employee. *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984).

In *Donahue*, the plaintiff was a probationary state employee who was discharged without a predisciplinary hearing as required by the personnel regulation. The Department of Health argued that the predisciplinary hearing did not apply to a probationary employee who could be dismissed at any time as long as her dismissal was not based on an impermissible reason such as discrimination. *Id.* at 248. We agreed that a probationary employee had no constitutional entitlement to a hearing before dismissal and that, absent an applicable statute or regulation, the Department's ac-

tion would have been proper. *Id.* at 249. However, we found that the personnel rule requiring a predisciplinary hearing was applicable to probationary employees and that the Department violated Donahue's procedural due process rights by discharging her without a hearing. We explained:

> When the state, however, promulgates a regulation that imposes on governmental departments more stringent standards than are constitutionally required, due process of law requires those departments to adhere to those standards in discharging employees. *Perry [v. Sindermann]* 408 U.S. 593, 92 S.Ct. 2694 [33 L.Ed.2d 570 (1972)]; *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C.Cir.1977); *Shumate v. State Personnel Board*, 34 Colo.App. 393, 528 P.2d 404 (1974). Personnel Rule 7–3–1 is such a standard. Nothing in the rule limits the predisciplinary meeting to certified employees only, and we decline to read such a limitation into it.

*Id.* (footnote omitted).

The case now before us is not a case like *Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo.1990), where the majority found that the sheriff was prohibited by statute from adopting a procedural manual restricting his ability to discharge deputy sheriffs. Here the RIF policy adopted by the school board is within its statutory authorization. § 22–32–109(1)(a)–(c) and § 22–32–110(1)(k), 9 C.R.S. (1988). There is no contention that the RIF policy was not properly promulgated. Accordingly, even though the district school board was not obligated to adopt a RIF policy, its decision to do so was within its discretion and the policy is binding on the board until it is altered or amended. Hence, I would conclude that it is enforceable by a teacher to whom it applies.

Whether the RIF policy applies to the petitioners requires turning to the terms of the policy itself to determine if the policy's coverage is limited to tenured teachers. Paragraphs 4, 5, and 6 provide:

4. After consideration of transfers within the areas of certification, reduction of positions will occur in the following order:

   a) all probationary teachers

   b) least senior tenured teachers

   c) progressively up the seniority list.

5. Those teachers who are laid off as a result of the reduction in force will be:

   a) considered on a leave of absence for one year

   b) allowed to remain in the insurance program at their expense for one year

   c) given consideration for substitute teaching for one year

6. Any teachers who are recalled in the following year from the reduction in force will be considered strictly on a seniority basis.

While paragraph 4 makes the distinction between tenured teachers and probationary teachers, paragraphs 5 and 6 do not make such a distinction. The terms "those teachers who are laid off" and "any teachers who are recalled" do not suggest that nontenured teachers are excluded from the policy. The express inclusion of probationary teachers in paragraph 4 which covers the full range of teaching positions strongly suggests that nontenured teachers are included in the policy. Further, attaining seniority is not limited to tenured teachers. In paragraph 3, the policy provides that, "Seniority shall mean the number of years of professional service in this district." Significantly absent are any terms qualifying the calculation of seniority to tenured teachers. Thus, absent any notice to the contrary, nontenured teachers as well as tenured teachers were entitled to the benefits of the plain meaning of the policy. *Donahue*, 690 P.2d at 249.

Accordingly, I respectfully dissent. I would reverse the court of appeals.

I am authorized to say that Justice LOHR joins in this dissent.