**LUCHT'S CONCRETE PUMPING, INC., a Colorado corporation, Plaintiff–Appellant,**

**v.**

**Tracy HORNER and Everist Materials, LLC, d/b/a Peak Concrete Pumping, an Iowa limited liability company, Defendants–Appellees.**

**No. 08CA0936.**

Colorado Court of Appeals, Div. I.

June 11, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Arckey & Reha, LLC, John F. Reha, Sara E. Yelton, Littleton, Colorado, for Plaintiff–Appellant.

Baker & McKenzie, LLP, Thomas Campbell, Chicago, Illinois; Letofsky & Dombrowski, Steven F. Letofsky, Frisco, Colorado, for Defendants–Appellees.

Opinion by Judge ROMÁN.

Plaintiff, Lucht's Concrete Pumping, Inc. (LCP), appeals the trial court's judgments in favor of defendants, Tracy Horner and Everist Materials, LLC (Everist), on claims regarding a noncompete agreement, duty of loyalty, and misappropriation of trade value. We affirm in part, reverse in part, and remand with directions.

## I.  Background

According to the trial court's findings of fact, LCP is in the concrete pumping business.  Concrete pumpers use pumps that are mounted on trucks to deliver ready-mixed concrete to a construction site.  Defendant Horner came to work for LCP as its mountain division manager in 2001.  LCP understood that the key to the success or failure of its mountain division depended upon Horner and the relationships he would establish in that region.  No other LCP employee possessed meaningful customer relationships in that region.

On April 15, 2003, two years after going to work for LCP, Horner, an at-will employee, was asked to sign, and did sign, an "employee non-disclosure and confidentiality agreement."  The agreement stated, among other things, that in the event of Horner's termi-nation, he agreed to return all company property and documents and further agreed not to compete with LCP for a period of twelve months following his termination.

Horner resigned from LCP on March 12, 2004.

Three days later, on March 15, 2004, Horner began working for Everist.  Everist is a supplier of ready-mix concrete and had many of the same customers in the mountain region as LCP. Shortly after Horner began working for Everist, Everist entered the concrete pumping business and began directly competing against LCP. Everist and Horner had begun discussing the possibility of Everist entering the concrete pumping business—and bringing Horner over as its pumping manager—as early as February 2004.

LCP alleged at trial that Everist's entry into the concrete pumping market, with Horner as its pumping manager, directly led to LCP's demise in the mountain region and further alleged that its decision to discontinue its business in that territory was a direct result of Everist's competition and Horner's decision to work for Everist.

LCP sued Horner for breach of contract, breach of duty of loyalty, breach of fiduciary duty, and misappropriation of trade values. It also sued Everist for aiding and abetting breach of duty of loyalty, aiding and abetting breach of fiduciary duty, intentional interference with contract, and misappropriation of trade values.

The trial court granted summary judgment in favor of Horner on the noncompete agreement, concluding that the agreement was unenforceable due to lack of consideration. Following a bench trial, the court issued a judgment that included extensive findings of fact and found in favor of Horner and Everist on all remaining claims.

This appeal followed.

## II.  Noncompete Agreement

LCP contends the trial court erred in ruling as a matter of law that the noncompete agreement signed by Horner was unenforceable for lack of consideration.  We conclude that continued employment was not sufficient

consideration; instead, independent consideration was required to make the noncompete agreement at issue enforceable.

## A. Standard of Review

Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002). Appellate review of a summary judgment is de novo. *Martini*, 42 P.3d at 632.

## B. Consideration

■■■ We are asked to decide whether the continued employment of an already existing employee constitutes consideration for a noncompete agreement. This is a matter of first impression in Colorado. We hold that when an employee continues his or her job without receiving additional pay or benefits when a noncompete agreement is signed, the agreement lacks consideration. Under these circumstances, additional consideration is required for the valid formation of the agreement.

■■■ A covenant not to compete must be supported by consideration. *Freudenthal v. Espey*, 45 Colo. 488, 499, 102 P. 280, 283–84 (1909). "Consideration is defined as '[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, [especially] to engage in a legal act.'" *Int'l Paper Co. v. Cohen*, 126 P.3d 222, 225 (Colo.App. 2005) (quoting *Black's Law Dictionary* 324 (8th ed.2004)); *see Compass Bank v. Kone*, 134 P.3d 500, 502 (Colo.App.2006) (consideration may be "a benefit received or something given up as agreed upon between the parties" (quoting CJI–Civ. 4th 30:5 (1998))).

Here, after already working for LCP, Horner was asked to and did execute a noncompete agreement. However, he was not given a pay increase, promotion, or additional benefits in consideration of his new commitment. In short, Horner did not receive anything in return for his promise not to compete.

LCP contends that Horner's continued employment is sufficient consideration. We reject this contention. We have found no Colorado case where an already employed worker is required to give up something in exchange for merely continuing employment. Colorado law guides us to the conclusion that continued employment under the same terms is insufficient to constitute consideration, that is, a benefit received or thing given. *See Compass Bank*, 134 P.3d at 502.

In *Metropolitan State Faculty Federation v. State*, 32 Colo.App. 420, 425, 514 P.2d 784, 786 (1973), another division of this court found valid consideration where employees received employment to which they were not previously entitled under an earlier contract and therefore received a benefit in exchange for modifications to a second contract. Here, in contrast, Horner was already employed by LCP and received no additional benefit for his promise not to compete.

LCP asks us to hold, as some other jurisdictions have done, that an employer's forbearance of its right to discharge an at-will employee is sufficient consideration. *See Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 804 N.E.2d 27, 31–32 (2004). However, a covenant not to compete is unlike other "proposal[s] to renegotiate the terms of the parties' at-will employment." *Id.* at 32. Accordingly, we decline to so hold. Covenants not to compete not only are disfavored in Colorado, *see Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 787 (Colo.App.2000), but also require an employee's promises that endure beyond the at-will relationship. While an employer may agree to continue an at-will employee's employment if the employee agrees to sign the covenant, nothing prevents the employer from discharging the employee at any future date. Thus, the employer's promise requires nothing more than was already promised in the original at-will agreement. *See Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 265–66 (Minn. Ct.App.1996) (employee "received only a promise of employment and did not gain any real advantage by signing the noncompetition agreement"); *Labriola v. Pollard Group, Inc.*, 152 Wash.2d 828, 100 P.3d 791, 796

(2004) (consideration lacking because "[e]mployer simply promised to perform what he promised [e]mployee in the original ... agreement in exchange for [e]mployee taking on the additional promise to not compete").

Conversely, the employee's promise to refrain from competition lasts months or years beyond the termination date. Thus, an independent consideration requirement "reflects the fact that employers and employees have unequal bargaining power." *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 164 (Minn.Ct. App.1993); *see Colo. Accounting Machs., Inc. v. Mergenthaler*, 44 Colo.App. 155, 156, 609 P.2d 1125, 1126 (1980) (legislative intent of Colorado statute disfavors noncompetition agreements).

Although our supreme court has identified situations where continued employment may furnish the necessary consideration to make a policy or procedure binding upon an employer, *see Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo.1990); *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711–12 (Colo. 1987), those cases are significantly different because they deal with benefits, rather than restrictions, construed in favor of employees, involve policies or procedures that are offered to a group of employees, and involve actions brought by employees to enforce an employer's promise. *Kuta*, 799 P.2d at 382; *Cont'l Air Lines*, 731 P.2d at 711–12. Additionally, the cases also require a finding that the "continued employment constituted acceptance of and consideration for" the new policies and procedures. *Cont'l Air Lines*, 731 P.2d at 711. As such, it is consistent to find consideration for continued employment in cases involving employee benefits but not for noncompete agreements involving already existing employees. *Compare Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn.1983) (Minnesota Supreme Court holds handbook policies binding upon employer where employee continued working with knowledge of the new or changed conditions), *with Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 741 (Minn.1982) (Minnesota Supreme Court requires independent consideration for noncompete agreement).

Other jurisdictions have also held that continued employment, without any additional factor, is insufficient consideration for an employee's agreement not to compete. In *Poole v. Incentives Unlimited, Inc.*, 345 S.C. 378, 548 S.E.2d 207, 209 (2001), the South Carolina Supreme Court concluded that when an employee's duties, position, and salary were left unchanged, a covenant not to compete entered after the employee began working was unenforceable for lack of consideration. Likewise, the Washington Supreme Court concluded that "[i]ndependent, additional[ ] consideration is required for the valid formation of a modification or subsequent agreement." *Labriola*, 100 P.3d at 794. The court explained that "[i]ndependent consideration involves new promises or obligations previously not required of the parties." *Id.*

We are persuaded by the rationale in these cases and in others that have similarly held that continued employment does not create consideration for a noncompete agreement once an employee has begun working for an employer. *See, e.g., Nat'l Recruiters*, 323 N.W.2d at 741; *Access Organics, Inc. v. Hernandez*, 341 Mont. 73, 175 P.3d 899, 903 (2008); *Stevenson v. Parsons*, 96 N.C.App. 93, 384 S.E.2d 291, 293 (1989); *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311, 316 (1975); *Martin v. Credit Prot. Ass'n*, 793 S.W.2d 667, 670 (Tex.1990); *PEMCO Corp. v. Rose*, 163 W.Va. 420, 257 S.E.2d 885, 890 (W.Va.1979); *Worley v. Wyo. Bottling Co.*, 1 P.3d 615, 621 (Wyo.2000).

Consequently, we conclude the trial court did not err in refusing to enforce the noncompete agreement.

### III. Duty of Loyalty

LCP further contends the trial court misapplied the law established under *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989) *(Mulei)*, when it determined that Horner did not breach a duty of loyalty to LCP. Although we agree that the trial court incorrectly applied the legal standards set forth in *Mulei* and later in *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020 (Colo.App.1993), we perceive no error in the trial court's determination that Horner did not breach his duty of loyalty.

In its judgment following the bench trial, the trial court determined that (1) Horner owed LCP a duty of loyalty, (2) Horner did not breach his duty of loyalty because his discussions with Everist and evaluation of pumping equipment were legally sanctioned pretermination activities, (3) Horner did not owe LCP a fiduciary duty, and (4) consequently, he did not breach any alleged fiduciary duty.

### A. Duty of Loyalty Arising Out of Employer–Employee Relationship

■ LCP first contends the trial court erred in determining that Horner did not owe it a "heightened" duty. We disagree that there exists a heightened duty and reaffirm that in Colorado there exists simply a duty of loyalty arising out of the employer-employee relationship.

In *Mulei*, the supreme court acknowledged that the parties in that case had characterized the duty of loyalty as a "fiduciary" duty of loyalty. *Mulei*, 771 P.2d at 492 n. 10. The *Mulei* court declined, however, to "delineate the precise scope of an employee's duty of loyalty as applied to all factual situations," and chose to label the duty at issue in that case "simply as a 'duty of loyalty' arising out of the employer-employee relationship." *Id.*

■ We thus do not read *Mulei* to create a heightened duty of loyalty in the employment context. Indeed, the duty of loyalty that an employee owes his or her employer is largely derived from Restatement (Second) of Agency § 387 (1958). *Mulei*, 771 P.2d at 492. If an employee is deemed an agent of the employer, the resulting relationship is fiduciary. *See* Restatement (Third) of Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf...."); *Mulei*, 771 P.2d at 492 n. 10 (duty of loyalty applies when "the principal/agent analogy is apt beyond question"). Consequently, the employee in

*Mulei* owed a fiduciary duty because he had sufficient authority, giving rise to the principal/agent analogy. *Id.*[1]

Likewise, in *Graphic Directions, Inc.*, an employer brought a claim for breach of fiduciary duty after three employees opened a competing business. There, another division of this court stated that under *Mulei*, "there may be circumstances under which the duty of loyalty does not apply to an employee." *Graphic Directions, Inc.*, 862 P.2d at 1023. However, that division likewise determined that the employee in that case held a position of sufficient authority to subject him to the duty established in *Mulei*. *Id.* The division's analysis in *Graphic Directions, Inc.* mirrored that of *Mulei*.

■ To summarize, the duty of loyalty defined in *Mulei* and *Graphic Directions, Inc.* applies in situations where an employer establishes that an employee has sufficient authority to create a principal-agent relationship.

### B. Whether Horner Owed a Duty of Loyalty

■ We agree with the trial court that Horner owed LCP a duty of loyalty because he was a manager with sufficient authority that the principal/agent analogy is apt.

■ The Restatement (Second) of Agency § 387 (1958) states that "an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." It follows that an agent has a corresponding duty "not to compete with the principal concerning the subject matter of his agency." Restatement (Second) of Agency § 393 (1958). An employee's duty of loyalty applies to both solicitation of customers and the solicitation of coworkers. *Mulei*, 771 P.2d at 492.

■ Whether an employee owes an employer a duty of loyalty is typically a question of fact, but it can be analyzed as a matter of law in certain circumstances. *Graphic Di-*

---

1. The *Mulei* court acknowledged that there may be cases where an employee may not owe a duty of loyalty at all or for situations where an employee's duty of loyalty may not apply "in all its rigor ... regardless of the nature of the work performed." 771 P.2d at 492 n. 10. However, here, as in *Mulei*, we do not need to determine how broad the spectrum of the duty might be.

*rections, Inc.*, 862 P.2d at 1022 (citing *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 518 (Colo.1986)). Where, as here, the trial court's factual findings have ample record support, the legal effect of those facts is a question of law. *Golden Lodge No. 13, Indep. Order of Odd Fellows v. Grand Lodge of Indep. Order of Odd Fellows*, 80 P.3d 857, 859 (Colo.App.2003). We review de novo the court's application of the governing legal standards. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo.App.2008).

Horner and Everist argue that, unlike the employees in *Mulei* and *Graphic Directions, Inc.*, Horner did not hold a position of sufficient authority and, therefore, is not subject to the same duty of loyalty. We disagree because the trial court found that Horner maintained extensive customer relationships, was responsible for recruiting employees and for reporting on future work, and held limited pricing authority. Much like the employees in *Graphic Directions, Inc.*, Horner managed many aspects of certain customer accounts, supervised the work of other employees, and more important, had ongoing personal contact with many important clients. *See Graphic Directions, Inc.*, 862 P.2d at 1023.

The trial court's findings of fact are supported by the record and we therefore accept them. We thus conclude that Horner's position was one of sufficient authority so that the principal/agent analogy is apt beyond question. *See id.* Horner owed LCP a duty of loyalty.

### C. Whether Horner Breached His Duty of Loyalty

■ To establish a claim for relief, it is insufficient to show only that an employee owed a duty of loyalty; instead, it must also be shown that the employee breached that duty of loyalty. We turn next to whether the trial court erred in finding that Horner did not breach his duty of loyalty, and we perceive no error.

■ Colorado favors a policy of "free and vigorous economic competition." *Mulei*, 771 P.2d at 493. In light of that policy, an employee is entitled to take certain steps to prepare for competition with his or her employer after termination of employment. In evaluating whether an employee's actions constitute mere preparation or active competition, courts focus on the nature of the preparations to determine whether a breach has occurred. *Id.* at 492–93; *Graphic Directions, Inc.*, 862 P.2d at 1023; *see* Restatement (Third) of Agency § 8.04 (2006) (during period of agency relationship, "agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship").

■ "[W]hether an employee's actions constitute a breach of his [or her] duty of loyalty involves a question of fact to be determined by the trial court in the first instance based on a consideration of all the circumstances of the case." *Mulei*, 771 P.2d at 494.

LCP maintains Horner breached his duty of loyalty by withholding key information as to Everist's impending large-scale entry into the pumping market and by actively helping Everist enter into that market in direct competition with LCP while Horner was still in LCP's employ. Specifically, LCP asserts that Horner failed to disclose that he was going to work for Everist, that he was leaving LCP just before the start of the construction season, and that Everist was buying pumps that would allow it to dominate the market.

■ The trial court found that Horner conversed with Everist while still in LCP's employ and that Horner was aware of Everist's preparations to enter the concrete pumping business. However, an employee does not have a duty to disclose his or her plans to compete. Restatement (Third) of Agency § 8.04 cmt. c (2006) ("In this respect, the social benefits of furthering competition outweigh the principal's interest in full disclosure by its agents."); *Allied Supply Co. v. Brown*, 585 So.2d 33, 35 (Ala.1991) (employee has no duty to disclose plans to resign even when resignation is followed by competition with former employer).

Moreover, the trial court found no evidence that Horner solicited LCP customers or employees or disclosed any trade secrets or proprietary information. *Cf. Graphic Di-*

*rections, Inc.*, 862 P.2d at 1024 (breach of duty where employees solicited other employees and customers while still employed by employer); *Koontz v. Rosener*, 787 P.2d 192, 196 (Colo.App.1989) (breach of duty where employees agreed to terminate their employment en masse and set up a competing business); *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 382 A.2d 564, 569–70 (1978) (breach of duty where employee solicited customers prior to termination).

Although the trial court found some evidence to support LCP's claim that Horner was involved in assessing Everist's equipment needs and attended an equipment demonstration on behalf of Everist, the trial court determined that the product demonstration occurred after Horner's termination and that the extent of prior conversations regarding the equipment was minimal. Notably, permissible pretermination activities include "arranging for space and equipment." Restatement (Third) of Agency § 8.04 cmt. c (2006); *Veco Corp. v. Babcock*, 243 Ill.App.3d 153, 183 Ill.Dec. 406, 611 N.E.2d 1054, 1059 (1993) ("employees may plan, form, and outfit a competing corporation while still working for the employer but may not commence competition").

Accordingly, we perceive no error in the trial court's conclusion that Horner did not breach his duty of loyalty.

Based on this outcome, we need not address LCP's contentions that Everist aided and abetted Horner's alleged breach of duty.

IV. Misappropriation of Business Value

■ We agree with LCP, however, that the trial court erred when it did not issue a ruling on its claim for misappropriation of business value based on defendants' retention of Horner's cellular telephone number. We thus remand to the trial court to issue a conclusion of law consistent with its extensive findings of fact on this claim. *See Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859, 866 (Colo.App.2001) (remand is appropriate remedy when trial court order lacks sufficient findings of fact or conclusions of law for appellate review); *see also People v. Ingram*, 984 P.2d 597, 604 (Colo.1999).

■ LCP also argues that its business plan and Horner's established customer relationships constitute business values. We agree with the trial court that neither claim alleges sufficient novelty as required for misappropriation of an idea as business value. *See Smith v. TCI Communications, Inc.*, 981 P.2d 690, 694 (Colo.App.1999) (to support a claim for misappropriation based upon an idea, that idea must be novel). The evidence at trial was that both companies had the same customers in the mountain region and planned to grow their businesses through greater customer relationships, not novel business plans.

Finally, we deny LCP's request for costs on appeal. *See* C.A.R. 39(a) ("if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court").

The judgment is reversed as to LCP's claim for misappropriation of business value based on defendants' retention of Horner's cellular telephone number, and the case is remanded to the trial court for conclusions of law consistent with its findings of fact regarding that claim. In all other respects, the judgment is affirmed.

Judge TAUBMAN and Judge LICHTENSTEIN concur.